OPINION OF THE COURT
Robert James Friedman, J.
This matter was tried in open court over several days. The facts are basically very simple and some of them are not in question.
*373 The plaintiff was employed by the defendant bank from July 1981 until the time she was laid off in a general cutback of personnel made by the defendant. The defendant had a policy for all employees to the effect that if courses were taken in an approved institution and geared to benefit the value of the employees to the defendant bank; were initially approved by the bank; the employee obtained at least a "C” average and was "an active staff member” of the bank at the time of reimbursement, there would be 100% reimbursement for any tuition expended.
In July 1990, in accordance with normal procedures, the plaintiff obtained permission in writing from her two superiors at the bank and the human resources executive to take six credits at Fordham University commencing with the fall semester of 1990. This was the same procedure followed by plaintiff and defendant for six prior trimesters in which she had already obtained 36 credits leading to her MBA. Further, it was proved that the plaintiff commenced attending Ford-ham University in September 1990 and paid the tuition in the sum of $2,272. On or about October 9, 1990, the defendant gave to the plaintiff written notice to the effect that her employment would be terminated effective November 8, 1990 as part of a general layoff. However, the defendant continued to pay the plaintiff on a regular basis through January 29, 1991, although the payments were now called severance compensation.
The witnesses in this case were primarily employees of the defendant bank, all of whom had executive or administrative positions. None of these witnesses had anything derogatory to say about the plaintiff and in fact they testified that the plaintiff had been a valued employee for the nine years that she was at the bank and that her dismissal was only part of a general cutback of many employees made by the bank at that time. Also in evidence is the standard Human Resources Guide, which the plaintiff knew about and acknowledged. One clause therein states in substance that a person seeking reimbursement for taking educational courses must be "an active staff member” of the bank at the time of being reimbursed. Even though the plaintiff was no longer required to report to work, she continued to receive payments of salary, albeit termed "severance”, through January 29, 1991, and when the semester ended and she received her grades, she applied on or about January 17, 1991 for a refund of the tuition.
*374 The issues to be decided are:
(1) Did the plaintiff change her position in reliance on the defendant’s agreement to reimburse her for tuition?;
(2) Was the plaintiff an "active member” of the defendant’s staff at the time that she applied for reimbursement of tuition, and what does that mean?; and
(3) Is the plaintiff entitled under any theory to a return of the moneys expended by her?
There was no denial of the facts that the plaintiff commenced her school semester in September 1990 and that she completed her courses in a satisfactory manner. It also was proven that the plaintiff did not receive notice of her termination until October 9, 1990, which date was after the time that she could withdraw from Fordham and receive a return of any part of the tuition already paid by her. The defendant produced two employees who remembered the plaintiff being given written notice of her dismissal on October 9, 1990 and on that date asking one of her superiors, Robert Gottshall, about being reimbursed for her tuition. Mr. Gottshall stated to the plaintiff at that time that there should not be any problems and he would intercede for her.
Plaintiff and defendant entered into this agreement, similar to six prior agreements, and the court determines that this was a unilateral contract. The employee performed an act of taking approved educational courses and the defendant bank received the consideration of having a better educated and more proficient employee. As a condition precedent, the courses to be taken had to be approved in advance by the defendant bank to make sure that they were "bank-related” subjects. The plaintiff acted in reliance on the defendant’s promises and changed her position by taking the aforesaid courses at Fordham commencing in September 1990. She testified that she never would have expended the moneys herein if she had known in advance that the defendant either was going to fire her or not reimburse her. Where one party has fully performed on his part this leaves only an obligation to be performed by the other party (Todd v Weber, 95 NY 181; Flemington Natl. Bank & Trust Co. v Domler Leasing Corp., 65 AD2d 29, affd 40 NY2d 678). The plaintiff by attending classes satisfactorily performed an act of acceptance and the contract became binding.
The defendant’s sole defense to this matter is based on its theory that the plaintiff did not comply with a condition *375 subsequent in that she was not employed by it at the time that she was to receive reimbursement for the tuition. The interpretation of an agreement is within the province of the court and may be determined as a matter of law (Hartford Acc. & Indem. Co. v Wesolowski, 33 NY2d 169) and in fact it is the responsibility of the court to interpret written contracts (Mallad Constr. Corp. v County Fed. Sav. & Loan Assn., 32 NY2d 285; see also, 4 Williston Contracts § 601, at 303 [3d ed]). It is for this court to determine the meaning of the clause in the contract relating to reimbursement of tuition. However, what does the phrase "active staff member” mean? Does it mean that any employee not working for the bank cannot be reimbursed by the bank for tuition? Bank witnesses testified that this clause meant that someone had to be a full-time employee of the bank when they apply for and receive reimbursement. If the intent of the parties and if the intention of the parties is determinable by written agreements, the question is one of law (Rentways, Inc. v O’Neill Milk & Cream Co., 308 NY 342). The fact that one of the plaintiff’s superiors was not aware of the written terms of the agreement and agreed to intercede for the plaintiff is of no bearing and cannot affect the intent set forth in the document in question herein. Only when the intent must be determined by disputed evidence or inferences outside the written words of the instrument is a question of fact presented (O’Neil Supply Co. v Petroleum Heat & Power Co., 280 NY 50).
There is a question of interpretation of the phrase in question contained in this agreement. The employee (plaintiff) had to be employed by the defendant bank at the time that she applied for and was to receive a refund of tuition, barring other contractual breaches. However, it is the determination of this court that the intent spelled out in the agreement was that applicants for refunds of tuition had to be full-time employees unless they were prevented from the same due to acts beyond their control. Plaintiff was receiving severance pay over a period of time and by her own testimony had started employment with the Hudson Valley National Bank on December 10, 1990. However, this change of employment was necessitated by the acts of the defendant. The plaintiff did not receive her grades prior to her dismissal from the defendant bank on October 9, 1991, because she had not then completed the semester and, therefore, they could not be submitted to the defendant at that time. It is the finding and determination of this court, however, that she was not an *376 employee of the defendant at the time she applied for reimbursement of tuition due to the deliberate acts of the defendant and without any fault on the part of the plaintiff.
The plaintiff acted in reliance on the defendant’s written agreement made in July 1990, and did everything that she was supposed to do prior to receiving notice on October 9, 1990 that she was fired, without cause. The only condition with which the plaintiff could not comply was that of being employed by the defendant at the time request was made for reimbursement, but the defendant prevented the plaintiff from fulfilling this condition. The defendant would now ask this court to relieve it of its obligations even though it prevented the other party from complying. Such a result would not be equitable and would be a travesty of justice. There is an implied condition of every contract that one party will not prevent performance by the other (Grad v Roberts, 14 NY2d 70; Patterson v Meyerhofer, 204 NY 96). The defendant in this case permitted and even encouraged the plaintiff to enter school for the September 1990 semester and then prevented her from complying with one of the conditions for reimbursement. The defendant bank having prevented full performance of the conditions which it set forth in its rules may not now rely on such failure to excuse its own nonperformance (Bass v Sevits, 78 AD2d 926). The defendant cannot avail itself of such nonperformance by the plaintiff (Simon v Electrospace Corp., 28 NY2d 136; Wagner v Derecktor, 306 NY 386).
A party who prevents performance of the contract by another party has perpetrated a breach of the contract and is liable to the other party (Dwyer v Interborough Rapid Tr. Co., 241 NY 616). The defendant bank prevented the plaintiff from fulfilling a condition subsequent to her full performance of a contract and now appears in a cavalier and callous manner to ask this court to deny the plaintiff from receiving damages on a contract which the defendant breached. The defendant breached its contract with the plaintiff, who sustained actual damages by paying out the sum of $2,272 in tuition.
It is the decision of this court that the plaintiff have judgment against the defendant for the sum of $2,272 with interest thereon from the 17th day of January 1991, together with the costs and disbursements herein.