IN THE COURT OF APPEALS OF TENNESSEE
AT MEMPHIS
October 10, 2000 Session

## WILLS & WILLS, L.P. v. RAYMOND B. GILL, III

**Direct Appeal from the Chancery Court for Shelby County**
**No. 99-0645-1     Walter L. Evans, Chancellor**

_____

**No. W1999-01755-COA-R3-CV - Filed January 4, 2001**

_____

Owners of adjacent properties entered into negotiations and a subsequent agreement regarding issues concerning their properties. Dispute between the parties arose after one owner began construction of a Walgreens store in an area one party contended was other than that designated for the location of future buildings on the plat configuring the parties' properties. The other party alleged that the parties did not have an agreement between them concerning the location of future buildings on the adjacent properties. The trial court determined that the parties only had a meeting of the minds as to drainage improvements and further determined that the agreement was a contract only for drainage in that the agreement did not contain specific, written restrictive covenants as to the location for future buildings. We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed; and Remanded**

DAVID R. FARMER, J., delivered the opinion of the court, in which W. FRANK CRAWFORD, P.J., W.S. and HOLLY K. LILLARD, J., joined.

Richard M. Carter and Curt R. Soefker, Memphis, Tennessee, for the appellants, Wills & Wills, L.P.

James W. Surprise, Memphis, Tennessee, for the appellee, Raymond B. Gill, III.

**OPINION**

Raymond Gill, III (Gill) owns real estate in Memphis known as the Kirby Gate Shopping Center (Kirby Gate). Walter Wills, III (Wills) owns the property adjoining Kirby Gate to the north as well as the property south of Kirby Gate, which is located across the street from the shopping center. In the fall of 1986, the parties entered into negotiations regarding the development of their adjacent properties. The parties' discussions focused mainly on the placement of buildings and the drainage of the property. Before Mr. Wills would agree to allow Mr. Gill to divert water onto his property, Mr. Wills wanted assurances from Mr. Gill regarding the coordinated development of the properties. In order to satisfy Mr. Wills' concerns, Mr. Gill had his architect prepare sketches of the

site which detailed the proposed development of the site and the proposed drainage plan. An agreement between the parties was reduced to writing on the face of a proposed drainage improvements plan and was signed by the parties on November 4, 1986. The writing stated:

> The undersigned, owners of Kirby Gate Shopping Center, also known as Kirby Quince Shopping Center, their successors and assigns, approve this plan and agree to implement the improvements shown hereon. Walter D. Wills, III agrees to provide easements necessary for the implementation of the improvements. If the improvements are not completed within one year, then easements shall be granted to the extent such easements do no interfere with the normal operation of Walter D. Wills, III property.

In 1998, Mr. Wills discovered that Mr. Gill planned to build a free-standing Walgreens store at Kirby Gate which he believed would interfere with his property.[1] Mr. Wills believed that the Walgreens should be built only in the areas designated "future addition" or "future building" on the proposed drainage improvement plat. Mr. Wills filed a complaint seeking a declaration of the parties' respective rights under the agreement and a permanent injunction. The trial court entered a temporary restraining order against Mr. Gill, preventing him from further construction on the Walgreens building. A preliminary injunction hearing was held at which time the court granted the injunction dependent upon Mr. Wills' posting of an injunction bond. The trial court found that the agreement between the parties related only to drainage and that the agreement was not a contract for any other purpose. Further, the trial court held that Mr. Gill was allowed to go forward with the construction of the Walgreens store as long as he remained in compliance with the drainage agreement. Upon subsequent motion, the trial court ordered Mr. Wills to pay $3,000 of Mr. Gill's discretionary costs.

On appeal, Mr. Wills raises the following issues, as we perceive them, for this court's review:

1. Whether the trial court erred in finding that the agreement between the parties related only to drainage and was not a contract for any other purpose.

2. Whether the trial court erred in holding that Mr. Gill was not precluded by the agreement from undertaking construction on his property.

3. Whether the trial court erred in holding that Mr. Gill could construct the Walgreens store as proposed as long as he remains in compliance with the drainage requirements in the agreement.

---

[1]It should be noted here that, at the time of the parties' agreement in November of 1986, the property making up the proposed Walgreens site was owned in part by Mr. Gill and in part by Dr. Pinkerton, who is not a party to this action. At that time, Mr. Gill did not have a contract to purchase the "Pinkerton lot" nor did he have any legal right to obtain possession of it from Dr. Pinkerton. Mr. Gill did, in fact, purchase the Pinkerton lot in August of 1987.

4. Whether the trial court erred in granting Mr. Gill's motion for allowance of discretionary costs.

The interpretation of a written agreement is a matter of law and not of fact. Therefore, our review is *de novo* on the record with no presumption of the correctness of the trial court's conclusions of law. *See Union Planters Nat'l Bank v. American Home Assurance Co.*, 865 S.W.2d 907, 912 (Tenn. Ct. App. 1993). To the extent that the issues involve questions of fact, however, our review of the trial court's ruling is *de novo* with a presumption of correctness. *See* Tenn. R. App. P. 13(d). Where the issues involve a determination of the credibility of witnesses, the trial court is the best judge of credibility because it alone has the opportunity to observe the appearance and demeanor of the witnesses. Thus, its findings of credibility are entitled to great weight on appeal. *See Tenn-Tex Properties v. Brownell-Electro, Inc.*, 778 S.W.2d 423, 426 (Tenn. 1989).

The cardinal rule for interpreting contracts is to ascertain the intention of the parties and to give effect to that intention consistent with legal principles. *See Winfree v. Educators Credit Union*, 900 S.W.2d 285, 289 (Tenn. Ct. App. 1995); *Rainey v. Stansell*, 836 S.W.2d 117, 118 (Tenn. Ct. App. 1992). To determine intent, the court may look to the facts and circumstances surrounding the execution of the agreement as well as the parties' admissions. *See Frizzell Constr. Co., Inc. v. Gatlinburg, L.L.C.*, 9 S.W.3d 79 (Tenn. 1999), *cert. denied*, 120 S. Ct. 2679 (2000). In construing contracts, the words expressing the parties' intention should be given their usual, natural, and ordinary meaning. *See Taylor v. White Stores, Inc.*, 707 S.W.2d 514, 516 (Tenn. Ct. App. 1985). In the absence of fraud or mistake, a contract must be interpreted and enforced as written, even though it contains terms which may seem harsh or unjust. *See Heyer-Jordan & Assocs. v. Jordan*, 801 S.W.2d 814, 821 (Tenn. Ct. App. 1990).

In the case at hand, the dispute between these parties concerns what was meant by the essential term "improvements." Mr. Wills testified that the term "improvements" meant drainage improvements, building location, circulation between the properties, and the locations of the drive entrance and the truck court. To support this testimony, counsel for Mr. Wills introduced as Exhibit 1 the proposed drainage improvements plan. In addition to the agreement, the plan included the following language:

NOTE:
To the extent shown hereon, existing curb/gutter along the north and west property lines to be removed during future construction development on the north of the site to provide for common ingress/egress. Future drive and related parking areas, to the extent shown, to be constructed at the developer to the north expense to provide internal circulation across west line of shopping center site to the property to the north. Exact location of said access drive to be determined at a later date by future development plans. Land east of the centerline of said drive to be maintained by shopping center owner; west of centerline of said drive by developer to the north. Drainage swale to be provided in this area during future construction.

Cost for roads, drainage swale, removal of curbs and gutters, and all other work related to this area to be borne by developer to the north.

Mr. Gill, on the other hand, testified that the term "improvements" in the context it is used on Exhibit 1 refers solely to drainage improvements. Mr. Gill averred that the proposed drainage improvements plan was merely a speculation on what could happen regarding building location. Further, Mr. Gill testified that Exhibit 1 was only a drainage improvements plan, that he signed and agreed only to a drainage plan, and that if he would have agreed to building placement, it would have been on a site plan, not a drainage agreement. In summary, Mr. Wills intends the term "improvements" to refer not only to drainage improvements, but to the location of buildings, curbs, entrances, and the truck court, while Mr. Gill intends the term "improvements" to mean solely drainage improvements.

In order to have a binding contract, the parties to the contract must have a meeting of the minds as to the essential terms. *See Sweeten v. Trade Envelopes, Inc.*, 938 S.W.2d 383 (Tenn. 1996); *State v. Clements*, 925 S.W.2d 224 (Tenn. 1996). After reviewing the record, this court finds that the only improvements the parties had a meeting of the minds on are drainage improvements. Thus, the only improvements binding on both Mr. Wills and Mr. Gill are the drainage improvements. The agreement, then, cannot be a contract for any purpose other than drainage as it lack the requisite mutual assent to any other definition of the essential term "improvements." The trial court was correct in its determination that Exhibit 1 is not a contract for any purpose other than drainage.

Exhibit 1 is an architect's schematic showing the intersection of Quince Road and Kirby Road and depicting the location of the Kirby Gate Shopping Center. On this plat are the locations of the existing buildings and parking lots. Additionally, the architect has included dashed lines representing the proposed locations of future buildings and parking lots. What is noteworthy about Exhibit 1, however, is that it is entitled "Proposed Drainage Improvements" and that the specific notations on its face relate only to drainage. Additionally, there is no language of a covenant restricting the construction of buildings only to that area proposed on Exhibit 1 anywhere on the face of the parties' agreement. Therefore, it is clear to this court that there is nothing on the document binding either party to a particular location for constructing any future building that either party may decide to erect on their property. Thus, the trial court did not err in concluding that Mr. Gill is not precluded by the agreement from building the Walgreens store in a location other than that proposed on Exhibit 1. Additionally, based upon the foregoing conclusion that Exhibit 1 embodies a formal drainage agreement which is binding on both parties, the trial court did not err in determining that Mr. Gill could construct the Walgreens store as he proposed provided he remains in compliance with the drainage agreement.

Rule 54.04(2) of the Tennessee Rules of Civil Procedure provides courts with the discretion to award costs for "reasonable and necessary court reporter expenses for depositions or trials, reasonable and necessary expert witness fees for depositions or trials, and guardian ad litem fees[.]" The trial court is vested with wide discretion in awarding these costs. *See Perdue v. Green Branch Mining Co.*, 837 S.W.2d 56, 60 (Tenn. 1992); *Benson v. Tennessee Valley Elec. Coop.*, 868 S.W.2d

630, 644 (Tenn. Ct. App. 1993).  In this case, the trial court awarded the prevailing party, Mr. Gill, discretionary costs in the amount of $3,000 as reimbursement for costs incurred in this case.  This court is of the opinion that the trial court did not abuse its discretion in awarding said costs to Mr. Gill.

Based on the foregoing, we affirm the trial court's ruling in all respects.  The costs of this appeal are taxed to the appellant, Wills & Wills, L.P., and its surety, for which execution may issue if necessary.

_____
DAVID R. FARMER, JUDGE