IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
September 21, 2004 Session

## SWEETWATER HOSPITAL ASSOCIATION v. ANITA HOUSER CARPENTER

**Appeal from the Chancery Court for Monroe County**
**No. 13623     Jerri S. Bryant, Chancellor**

---

**No. E2004-00207-COA-R3-CV  - FILED FEBRUARY 2, 2005**

---

Sweetwater Hospital Association ("the Hospital") entered into a contract with its then-employee, Anita Houser Carpenter ("the defendant"), by the terms of which the Hospital agreed to provide tuition assistance to enable the defendant to attend school. The contract further provides that if the defendant works for the Hospital for a period of five years following the completion of her studies, her loan would be forgiven. At the conclusion of a course of studies to become a nurse anesthetist, the defendant sought employment elsewhere because it appeared to her that there were no nurse anesthetist positions available at the Hospital. The Hospital brought this action for breach of contract, seeking repayment for the monies furnished to the defendant under the contract. The defendant responded that the Hospital breached the contract by failing to offer her a position as a nurse anesthetist. Following a bench trial, the trial court entered a judgment for the Hospital. The defendant appeals. We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court
Affirmed; Case Remanded**

CHARLES D. SUSANO, JR., J., delivered the opinion of the court, in which HERSCHEL P. FRANKS, P.J., and D. MICHAEL SWINEY, J., joined.

Richard A. Schulman and R. Jonathan Guthrie, Chattanooga, Tennessee, for the appellant, Anita Houser Carpenter.

Van R. Michael, Sweetwater, Tennessee, for the appellee, Sweetwater Hospital Association.

**OPINION**

I.

The defendant was employed by the Hospital as a registered nurse beginning in 1994. In 1999, she approached Scott Bowman, the Hospital's Administrator, and inquired as to whether the

Hospital would be willing to furnish her tuition assistance for a course of study leading to certification as a nurse anesthetist. Subsequently, the defendant and the Hospital entered into a contract pursuant to which the Hospital agreed to give the defendant tuition assistance payments in the form of a monthly cash stipend. The Hospital further agreed to pay the defendant's health and dental insurance premiums while she was in school. The defendant agreed that if she failed to rejoin the Hospital as an active employee following the conclusion of her studies, she would be responsible for paying the Hospital for the advances plus accrued interest. However, the parties agreed that if she remained an employee of the Hospital for five years, her loan repayment obligation would be forgiven. It was the defendant's understanding, based upon her conversations with Mr. Bowman, that she would be permitted to rejoin the Hospital as a nurse anesthetist; but she also understood that the ultimate decision to hire her as a nurse anesthetist would be left to Dr. Kent Chapman, chief of anesthesia, who apparently would be consulting with Rick Henderson, a nurse anesthetist who also worked at the Hospital. Mr. Bowman claims to have expressly informed the defendant that if there was no position available at the time she completed her schooling, she would be responsible for the balance due under the contract.

The defendant applied to and was accepted by the nurse anesthetist school at the University of Tennessee – Chattanooga ("UT-C"). She pursued her studies at Erlanger Hospital in Chattanooga. She started school in May, 1999. The program was scheduled to last for twenty-seven months. During the time she was in school, she remained an employee of the Hospital, but was shown as being on educational leave.

In early 2001, as she was nearing graduation, the defendant inquired about possible employment at the Hospital. She first contacted nurse anesthetist Henderson to discuss whether there was an available nurse anesthetist position. Mr. Henderson informed her that he had spoken with Dr. Chapman and that the Hospital did not have enough work to hire another nurse anesthetist at that time. She subsequently met with Dr. Chapman. He told her that the Hospital was considering the hiring of another nurse anesthetist, but that a definite position was not available at the time of their conversation. However, Dr. Chapman never stated that there were no positions of any kind available at the Hospital. Subsequent to all of this, the defendant made plans to move to Chattanooga, as Erlanger had offered her a nurse anesthetist position.

Dr. Chapman never shared with Mr. Bowman the conversation he had had with the defendant. By the same token, the defendant never contacted Mr. Bowman about her employment status. Mr. Bowman had not authorized anyone to tell the defendant that no positions were available. In the spring of 2001, Mr. Bowman heard a rumor that the defendant was planning to move to Chattanooga and did not intend to return to the Hospital. By letter dated May 21, 2001, Mr. Bowman informed the defendant that he had learned of her decision not to return to the Hospital. He requested repayment of her obligation under the contract.

On March 8, 2002, the Hospital filed this action against the defendant seeking the balance due under the contract.[1]  The defendant responded by raising, as an affirmative defense, that the Hospital had breached its contract and therefore was not entitled to recover under the contract.  A one-day bench trial was held on November 24, 2003.  At the conclusion of the trial, the court found that the Hospital satisfied its burden of proof by demonstrating that the defendant breached the contract.  It further found that the defendant presented no evidence of a breach by the Hospital.  By order entered January 15, 2004, the trial court awarded the Hospital $29,879.84 plus interest, the total of which was $43,396.49.  From this order, the defendant appeals.

II.

The defendant contends that the Hospital materially breached the contract when it failed to offer her a nurse anesthetist position upon completion of her course work.  The defendant argues that the Hospital, as the initial party in breach, cannot now seek to recover under the contract based upon a subsequently-occurring breach by her.  *See* **Roy McAmis Disposal Svc., Inc. v. Hiwassee Systems, Inc.**, 613 S.W.2d 226, 228-29 (Tenn. Ct. App. 1979); **McClain v. Kimbrough Constr. Co., Inc.**, 806 S.W.2d 194, 199 (Tenn. Ct. App. 1990).  The threshold issue for our determination is clear:  Does the contract, by its language, impose an obligation upon the Hospital to offer the defendant a nurse anesthetist position upon the successful completion of her course of studies?  We conclude that the language of the contract – the language to which these parties agreed – does not require that the Hospital tender an offer of employment *as a nurse anesthetist* to the defendant upon the completion of her Hospital-aided education in order to maintain its right to pursue an action to recover monies paid to her by the Hospital pursuant to the terms of the contract.

III.

Our review of this bench trial is *de novo* upon the record of the proceedings below, but the record comes to us accompanied by a presumption of correctness as to the trial court's factual findings unless the evidence preponderates against those findings.  Tenn. R. App. P. 13(d).  Our review of the trial court's conclusions of law is *de novo* with no presumption of correctness attaching to the trial court's conclusions of law.  **Ganzevoort v. Russell**, 949 S.W.2d 293, 296 (Tenn. 1997).  The interpretation of a contract is a question of law.  **Wills & Wills, L.P. v. Gill**, 54 S.W.3d 283, 285 (Tenn. Ct. App. 2001).

The cardinal rule in contract interpretation requires a court to "ascertain the intention of the parties and to give effect to that intention consistent with legal principles."  **Id.**, at 286.   If the contract is plain and unambiguous, its meaning is a question of law and it is incumbent upon the court to interpret it as written according to its plain terms.  **Bradson Mercantile, Inc. v. Crabtree**, 1 S.W.3d 648, 652 (Tenn. Ct. App. 1999).  Language in a contract must be accorded its "usual, natural, and ordinary meaning."  **Id.**  Unambiguous language must be interpreted "as written rather

---

[1]The amount sought was $37,460.21.  This amount was calculated by adding the amount of $29,879.84, the amount due under the note, plus the interest rate of one percent per month of the total balance.

than according to the unexpressed intention of one of the parties." *Id.* "Courts cannot make contracts for parties but can only enforce the contract which the parties themselves have made." *Id.* Consequently, a contract must be enforced as it is written absent fraud or mistake, even if the result of doing so would appear harsh or unjust. *Heyer-Jordan & Assoc., Inc. v. Jordan*, 801 S.W.2d 814, 821 (Tenn. Ct. App. 1990).

The contract at issue provides, in relevant part, as follows:

PROMISSORY NOTE[2]

I, ___Anita Houser___, an employee of the [Hospital], hereinafter referred to as Maker, promise to pay to the [Hospital] at offices in Sweetwater, Tennessee, hereinafter referred to as Lender, the sum of such amounts as may from time to time be advanced to me and endorsed in the schedule of advances below: $1,000.00 per month for twenty-four (24) months as approved by the Board of Directors at their regular meeting on March 23, 1999.

\* \* \*

The Maker further understands and agrees, and it is understood between the parties that:

This loan is made subject to the approval of the Administrator of the [Hospital].

Maker expressly agrees that he/she shall not accept any other financial assistance which carries with it a service obligation from the program in which he/she is involved.

For calculation of repayment, the loan shall bear interest at the rate of 1% per month of the total balance.

Repayment shall be in annual installments at the commencement of the repayment period and in no case shall the repayment period be more than five (5) years of full time service. Repayment for a Maker who fails to complete his course of study will be upon demand on the date the recipient ceases his course of study. If a Maker who has completed his course of study fails to return to the [Hospital] for a period sufficient to cancel the debt, the remainder of the debt, with

---

[2]The parties sometimes refer to this document as a "note" and sometimes as a "contract." Because each party has obligations under the document and since it is signed by both, we believe it is more correctly referred to as a "contract."

-4-

accrued interest from the original advance, shall be payable on demand.

One of the considerations for this loan is that the Maker agrees to become or remain an employee of the [Hospital] and for each year of such continuous full time employment with the [Hospital] subsequent to the date of the completion of the course of study the Maker shall receive a credit of twenty (20%) of the total balance owed on the loan . . .

In the event the Maker fails to complete five (5) years of continuous full time employment the balance of any principal due together with interest from the original date of advance shall apply . . . to all balances remaining due under this loan.

In the event the Maker does not complete his course of study or return to the [Hospital] upon completion of this course, interest shall accrue from the date of the first advancement.

DEFINITION

(Course of Study) – That period of time in which a Maker is enrolled as a student in one of the courses approved by the Administrator of the [Hospital].

IN WITNESS WHEREOF, the parties have executed this agreement at [Hospital] on March 25, 1999.

s/ Anita Houser<br>Maker

ACCEPTED: s/ Scott Bowman
          SCOTT BOWMAN, ADMINISTRATOR
          Sweetwater Hospital Association

(Numbering in original omitted).

The contract provides that "[o]ne of the considerations for this loan is that the [defendant] agrees to become or remain *an employee* of the [Hospital]." (Emphasis added). The contract does not state *in what capacity* the defendant is "to become or remain an employee." There is nothing in the language of the contract stating that the Hospital has an obligation to offer the defendant a nurse anesthetist position. The defendant argues that in their discussions concerning the terms of the contract, Mr. Bowman gave her an oral assurance that the Hospital would provide her a nurse

anesthetist position. While, according to the defendant, she knew that the decision whether to hire her as a nurse anesthetist ultimately belonged to Dr. Chapman, she testified that Mr. Bowman did not believe that it would be a problem. Mr. Bowman, however, contends that he explained to the defendant that if no position was available at the time she finished school, she would be responsible for the amount due under the contract. None of this changes the fact that the parties' agreement – the "deal" struck by them pertaining to the repayment of the tuition assistance – does not recite an obligation on the part of the Hospital to offer a nurse anesthetist position to the defendant.

At the conclusion of the bench trial below, the trial court opined as follows:

> [i]t's [the defendant's] burden of proof in this case that the plaintiff breached the contract. It's the [Hospital]'s burden of proof that the defendant breached the contract. In this case there's no proof by the defendant that the [Hospital] breached the contract. There is proof that the defendant breached her own contract by taking a job someplace else without specifically getting proof that she was not going to be offered a job by [the Hospital].

The evidence does not preponderate against the trial court's determinations. The defendant did not work at the Hospital after she completed her course of studies at UT-C. There is no evidence that the Hospital breached any of its contractual obligations that, in turn, prevented the defendant from working there. While she was not offered a nurse anesthetist job – the job she wanted – there was no proof she sought another job at the Hospital. As a matter of fact, Mr. Bowman testified that a position as a registered nurse was available at the Hospital had the defendant sought it. If she had accepted a job as a registered nurse at the Hospital, she would have then been in a position to "work out" her repayment obligation to the Hospital. The Hospital did not prevent the defendant from taking advantage of the debt forgiveness provisions of the parties' contract. She is the one who chose to seek employment elsewhere and not take advantage of a job at the Hospital – one which would have enabled her to avoid repaying the cost of her education. It may not have been the job she wanted, but it was a job that would have resulted in the forgiveness of her debt.

Since the defendant did not work at the Hospital after graduation, we find that the repayment provisions were triggered and, consequently, she is required to repay the monies provided to her pursuant to the terms of the contract plus accrued interest.

IV.

In her brief, the defendant makes a policy argument as to why the trial court's judgment should be reversed. She contends that a part of her incentive to enter into this agreement was the opportunity to receive credit for the tuition advanced under the contract at the rate of 20% per year for each of the five years alluded to in the contract. Therefore, so the argument goes, public policy dictates that an employer who fails to allow an employee to work so her tuition assistance may be forgiven should be barred from recovering the money advanced. In support of her argument, the

defendant refers us to decisions from other jurisdictions where courts have held that an employer who fails to allow an employee to satisfy the work requirements necessary to benefit from a loan forgiveness agreement cannot recover the amount furnished to the employee. *See **Tripodo v. Chase Manhattan Bank, N.A.***, 576 N.Y.S.2d 760 (N.Y. Civ. Ct. 1991); ***Cambridge v. Telemarketing Concepts, Inc.***, 655 N.Y.S.2d 795 (N.Y. Civ. Ct. 1997).

These cases are of no help to the defendant. Her reliance on these authorities is based upon a false premise: her belief that the contract language imposes an obligation upon the Hospital to offer her a nurse anesthetist position when she graduated from school. As we have previously held, the contract imposes no such obligation. The defendant did not present herself for employment at the Hospital after her graduation. She accepted a position elsewhere. Since she did not become employed at the Hospital, she is not entitled to rely upon the "forgiveness" provisions of the contract. She is obligated to repay the Hospital. We find no error in the trial court's judgment.

V.

The judgment of the trial court is affirmed and this matter is remanded to the trial court for enforcement of its judgment and for collection of costs assessed below, all pursuant to applicable law. Costs on appeal are taxed against the appellant, Anita Houser Carpenter.

_____
CHARLES D. SUSANO, JR., JUDGE