IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
January 16, 2019 Session

## GARY MILLER v. COLLIN MILLER ET AL.

**Appeal from the Chancery Court for Madison County**
**No. 74990      James F. Butler, Chancellor**

———————————————————————

### No. W2018-00482-COA-R3-CV

———————————————————————

This case involves the interpretation of a buy-sell provision in a partnership agreement. The trial court concluded that the buy-sell provision was properly triggered by the Appellee and ordered that $125,000.00 be paid to the Appellee, representing the value of Appellee's interest in the partnership. The trial court also awarded the Appellee attorney's fees and held that other claims which had been pursued by the parties were moot. Having reviewed the terms of the buy-sell provision, we conclude that the provision was never properly triggered and, therefore, reverse the judgment of the trial court to the extent that it purported to enforce the parties' agreement. Because various other claims were dismissed as moot in light of the trial court's specific enforcement of the buy-sell provision that dismissal is hereby vacated, and those additional claims are remanded for further consideration and proceedings in the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Reversed in Part, Vacated in Part and Remanded**

ARNOLD B. GOLDIN, J., delivered the opinion of the court, in which J. STEVEN STAFFORD, P.J., W.S., and ROBERT E. LEE DAVIES, SR. J., joined.

Michael L. Mansfield, Jackson, Tennessee, for the appellants, Collin Miller, Miller Contractors, Inc., R. Joel McAlexander, McAlexander Construction, LLC, d/b/a McAlexander Engineering , McAlexander Engineering, LLC, Miller Family Properties a/k/a Miller Family Properties Partnership, and Shane McAlexander, individually and d/b/a McAlexander Engineering.

C. Mark Donahoe, and Lowe Finney, Jackson, Tennessee, for the appellee, Gary Miller.

## OPINION

## BACKGROUND AND PROCEDURAL HISTORY

VFW Partners ("the Partnership"), whose purpose was and is to develop a parcel of real property in Jackson, Tennessee, has origins that trace back over a decade. At its genesis in June 2005, the Partnership was comprised of two members, R. Joel McAlexander and Shane McAlexander, each of whom owned a 50% interest in the Partnership. Ownership of the Partnership changed several years after its inception. On July 21, 2014, Gary Miller and Collin Miller bought Shane McAlexander's 50% interest, with each of the Millers individually acquiring a 25% interest. The remaining 50% ownership interest was retained by R. Joel McAlexander.

When the Millers bought into the Partnership, it was agreed among all partners that it was in the best interests of the Partnership to let the Jackson property lay dormant for an extended and undetermined period prior to development. According to Gary Miller, however, throughout most of 2015 and 2016, Collin Miller and R. Joel McAlexander actively concealed a plan to make unauthorized purchases, assume bank notes on behalf of the Partnership, and engage in self-interested transactions. In response to these alleged activities, Gary Miller took steps in September 2016 to exercise a buy-sell provision included in the governing partnership agreement. This provision, which is of central dispute herein, reads in full as follows:

> The partners agree that if one partner wishes to end the partnership and all the parties cannot agree to voluntarily dissolve the partnership as outlined above, then the partner wishing to terminate the partnership shall place a value on the partnership and offer to buy or sale [sic] his partnership interest (adjusted to reflect his percentage ownership in the partnership) to the remaining partners at the stated price. This offer must be in writing and shall state that the partner is willing to either sale [sic] his partnership interest or purchase the remaining partners interest at the same value (adjusted to reflect the percentage ownership in the partnership of the other partners). This offer must be tendered in writing to each partner and must be acted upon by the remaining partners within 15 days of the delivery of the buy-sale [sic] offer. The closing of the sale or purchase of the partnership interest shall be held within 30 days of the remaining partners notice of intent to sale [sic] to, or to buy, from the partner making the initial offer. In the event either party fails to honor the terms of this Buy-Sale [sic] Agreement, the other party shall have the right to seek specific performance of this provision and all applicable damages including but not limited to a reasonable attorney's fee and all reasonable costs for enforcing this provision.

In his attempt to exercise his rights under the above provision, Gary Miller sent a letter to Collin Miller and R. Joel McAlexander on September 12, 2016, wherein Gary valued the Partnership at $500,000.00 and offered to purchase Collin Miller's 25% interest for $125,000.00 or sell his own 25% interest in the Partnership for the same price. Notably, the offer did not state that Gary Miller was willing to purchase the interest of the remaining *partners* as was required under the buy-sell provision. Although an email requesting some clarification about the offer was thereafter sent to counsel for Gary Miller, no response was forthcoming.

On September 27, 2016, counsel for R. Joel McAlexander and Collin Miller sent a specific response to the September 12 offer. The response stated that R. Joel McAlexander and Collin Miller agreed with the $500,000.00 valuation Gary Miller had put on the Partnership and further stated that they would purchase Gary Miller's 25% interest "following the equalization of the partners' accounts." The upshot of the response was that Gary Miller would be required *to pay* nearly $3,000.00 to sell *his* interest in the Partnership.

This suggested "equalization" soon became a heated point of contention. On October 4, 2016, counsel for Gary Miller sent a letter to counsel for R. Joel McAlexander and Collin Miller, arguing that the buy-sell provision did not provide for what was proposed in the September 27 response. According to counsel for Gary Miller, pursuant to the buy-sell provision, "the buying party simply buys another individual out of the agreement subject to whatever liabilities have attached to the partnership otherwise." In a subsequent letter dated October 7, 2016, counsel for R. Joel McAlexander and Collin Miller informed counsel for Gary Miller that his clients would accept a purported offer from Gary to purchase their interests in the Partnership.

Shortly thereafter, on November 15, 2016, Gary Miller commenced the present litigation by filing a complaint in the Madison County Chancery Court. As is relevant to this appeal, Gary Miller averred that R. Joel McAlexander and Collin Miller had breached the buy-sell provision when they responded that they would purchase his share in the Partnership after his share was equalized. Gary Miller contended that the court should grant him specific performance and require Collin Miller and R. Joel McAlexander to purchase his 25% interest outright for $125,000.00 and pay for his reasonable attorney's fees incurred in enforcing the buy-sell provision.

In addition to raising this issue, Gary Miller's complaint asserted a number of other claims, such as a count for breach of duty of loyalty, and alleged that Collin Miller and R. Joel McAlexander had engaged in a number of self-interested transactions by having services rendered to the Partnership through their own businesses, Miller Contractors, Inc., McAlexander Construction, LLC, and McAlexander Engineering, LLC. These businesses were also named as defendants, and Gary Miller prayed that the chancery court would "issue a temporary injunction pending the outcome of a trial on the

merits in this cause preventing Defendants from engaging in any additional transactions on behalf of the [Partnership.]"  In addition to this prayer in the complaint, a formal motion for temporary injunction was contemporaneously filed.  Specifically, the motion requested an injunction "preventing Defendants, R. Joel McAlexander and Collin Miller, and/or their agents, servants, employees, representatives, and/or any other individuals or entities in active participation and/or concert with Defendants from taking any further action in their capacities as partners and interest holders in the . . . Partnership . . . with regard to selling or encumbering assets of the Partnership at issue in this cause without first obtaining an order from [the court.]"

The Defendants thereafter filed a response to the motion for temporary injunction and a motion to dismiss/answer to the complaint.  A counter-complaint was also filed and was specifically brought in the name of Collin Miller, Miller Contractors, Inc., R. Joel McAlexander, Miller Family Properties a/k/a Miller Family Properties Partnership, and Shane McAlexander, individually and d/b/a McAlexander Engineering.  The counter-complaint set forth various causes of action and, among other things, asserted that Gary Miller had not fully paid his share of the consideration owed to Shane McAlexander for the prior sale of Shane's interest in the Partnership in 2014.

Following a hearing in August 2017, the chancery court ultimately determined that Gary Miller had properly triggered the buy-sell provision and that $125,000.00 should be paid to him for his interest in the Partnership.  In explaining its position in a letter ruling, which was later incorporated by reference in an order entered on February 14, 2018, the court found as follows:

> Paragraph 11 of the Partnership Agreement provides a method whereby a partner may either compel the other partner, or partners, to buy his interest at a stated price which he sets, or in the alternative, he must buy the other partners out at the same price.  It is not a dissolution of the partnership business, nor a liquidation thereof and winding up.  It is a transfer of the partnership interest from one partner to the other or others.
>
> By letter dated September 12, 2016, Gary activated the buy/sell provision in paragraph 11 of the Partnership Agreement.  The letter was addressed to Collin and Joel.  The leter was simple and straightforward, and referenced paragraph 11.  The letter valued the partnership at $500,000.00 and offered to purchase Collin's 25% for $125,000.00.  In the alternative, according to the terms of the partnership agreement, Gary offered to sell his interest for the same amount.
>
> On September 27, 2016, Mr. Mansfield, attorney for Collin and/or Joel, sent a letter agreeing with the $500,000.00 value and stating that the offer was accepted to buy Gary's interest, but that acceptance was

conditioned upon "equalizing of the partner's accounts". Equalizing the accounts, per the Mansfield letter, involved revaluing the partnership by deducting partnership obligations. This procedure, however, is provided for in Section 10 of the Partnership Agreement when the partnership is being dissolved and the business liquidated. The procedure is not provided for in Section 11 of the Partnership Agreement which contemplates the partnership will continue to operate and not be liquidated or wound up. Paragraph 11 is a classic buy/sell provision as opposed to a termination of the partnership and dissolution.

On October 7, 2016, Joel and Collin accepted Gary's offer to purchase "their interest" with a $500,000.00 valuation (adjusted for their respective interest) and the assumption of the partnership debts and liabilities. The Court notes that Gary has not offered to buy Joel's interest, only Collin's interest.

* * * *

The Court finds that Gary properly triggered the buy/sell clause in the Partnership Agreement and that Collin had the option of either accepting the offer or buying Gary out at the same price. Collin accepted the offer by opting to buy Gary's partnership interest. The additional qualifications put on the acceptance are of no consequence to the acceptance and Collin could not enforce these conditions. There may be some future settlements of accounts between the parties, and even third parties, but they are not a condition that has to be met prior to the conclusion of the purchase of Gary's interest by Collin.

Indicident to the entry of its February 14, 2018 order, the chancery court specifically certified its order as final pursuant to Rule 54.02 of the Tennessee Rules of Civil Procedure, and a notice of appeal was subsequently filed in this Court. However, on July 23, 2018, we entered an order indicating that the February 14, 2018 order was not a final judgment. We determined that several claims had not been ruled on and noted that, notwithstanding the chancery court's certification under Rule 54.02, an entire claim or party had not been fully adjudicated. Specifically, we noted that the chancery court's order did not address Gary Miller's claim for attorney's fees. Rather than dismiss the appeal, we allowed an opportunity for the parties to obtain a final judgment, and on September 20, 2018, the chancery court entered an amended order addressing our concerns about finality. In pertinent part, the chancery court's amended order stated as follows:

[T]he Court's previous order dated February 14, 2018 shall remain in full force and effect according to its terms and that all other claims in Plaintiff's

complaint and Defendants'/Counter-Plaintiffs' counter-complaint are hereby dismissed as moot in light of the Court's granting Plaintiff Gary Miller's demand for specific performance of the parties' agreement. Plaintiff Gary Miller is further hereby awarded attorney's fees in the amount of $15,430.00 incurred to-date in his prosecution and defense of this matter pursuant to the parties' agreement.

A supplemental record was transmitted to this Court following the entry of the chancery court's amended order, and the appeal thereafter proceeded with the filing of briefs and scheduling of oral argument.

## STANDARD OF REVIEW

Primarily at issue on appeal is the trial court's interpretation and enforcement of the buy-sell provision included in the underlying partnership agreement. "The interpretation of a written agreement is a matter of law and not of fact. Therefore, our review is *de novo* on the record with no presumption of the correctness of the trial court's conclusions of law." *Wills & Wills, L.P. v. Gill*, 54 S.W.3d 283, 285 (Tenn. Ct. App. 2001) (citation omitted).

## DISCUSSION

In their brief on appeal, the Defendants/Counter-Plaintiffs ("the Appellants") present a number of issues for our review. In general, they challenge the chancery court's order of specific performance relative to the buy-sell provision and its concomitant award of attorney's fees. They further submit that, based on the chancery court's erroneous grant of specific performance, it was also error to dismiss their remaining claims as moot.

As in the chancery court, one of the principal points of contention on appeal is whether the buy-sell provision requires an equalization of accounts incident to the performance of its terms. Although the Appellants invoke a number of alternative arguments in appealing the chancery court's conclusion that no such equalization is mandated, we, like the chancery court, are of the opinion that the framework of the buy-sell provision is not ambiguous. Under the buy-sell provision, a partner places a value on the partnership and then, when making an offer, must "state that the partner is willing to either sale [sic] his partnership interest or purchase the remaining partners interest at the same value (adjusted to reflect the percentage ownership in the partnership of the other partners)." The remaining partners/offerrees are free to act on the offer in one way or the other, but an offer made under the buy-sell provision "must be acted upon by the remaining partners within 15 days of the delivery of the buy-sale [sic] offer." The transaction is governed simply by (1) the valuation made in the offer, (2) the partners' respective ownership interests, and (3) the choice made by the remaining partners.

As the chancery court observed, however, when R. Joel McAlexander and Collin Miller responded to Gary Miller's offer pursuant to the buy-sell provision, they stated that they would purchase Gary Miller's interest following an equalization of the accounts, thereby purporting to obligate Gary Miller to pay them for selling his own interest. We agree with the chancery court that such a proposed equalization is not a proper response to an offer made under the buy-sell provision. As the chancery court remarked, "[t]he only possible response to a buy/sell offer . . . is basically 'I will sell my interest for the stated price' or 'I will buy your interest for the stated price'."

With that said, we are actually in agreement with the Appellants that the chancery court's order of specific performance was in error. Just as the conditional acceptance of the offer premised on an equalization went outside the parameters of the buy-sell provision, so too did the initial offer. As noted above, an offer made under the buy-sell provision must state that the partner is willing to sell his interest or purchase the interest of the remaining *partners*. There is no dispute that this did not occur in this case; Gary Miller only offered to buy Collin Miller's interest. Because the offer did not comply with the mandatory requirements of the buy-sell provision, we must respectfully disagree with the chancery court that the buy-sell provision was ever properly triggered.[1] Accordingly, we are compelled to conclude that it was error for the chancery court to order specific performance of that provision and to award Gary Miller attorney's fees for enforcement of the agreement. The chancery court's decision to award specific performance and attorney's fees is hereby reversed. The trial court is instructed to enter an order dismissing the claim for specific performance.

Given our conclusion on this matter, we are also compelled to vacate that portion of the chancery court's September 20, 2018 order which held that "all other claims in Plaintiff's complaint and Defendants'/Counter-Plaintiffs' counter-complaint are hereby dismissed as moot." Indeed, the chancery court's order reflects that it found these other claims moot "in light of the Court's granting Plaintiff Gary Miller's demand for specific performance of the parties' agreement." Inasmuch as the chancery court's cited basis for its mootness determination is now reversed, the additional claims dismissed as moot are remanded for further consideration and proceedings in the trial court. In remanding for reconsideration of these claims, we express no opinion as to whether they have merit or whether they may ultimately be subject to dismissal.

---

[1] As the buy-sell provision was never properly triggered, we find it to be of no moment that Collin Miller and R. Joel McAlexander attempted to insert conditions on acceptance that were not, in fact, in conformity with the provision.

- 7 -

**CONCLUSION**

For the foregoing reasons, the chancery court's order is hereby reversed in part, vacated in part, and remanded for further proceedings as may be necessary and are consistent with this opinion.

_____
ARNOLD B. GOLDIN, JUDGE